

# THE ATTORNEY GENERAL
## OF TEXAS

### AUSTIN, TEXAS 78711

JOHN L. HILL
ATTORNEY GENERAL

April 4, 1974

The Honorable Jack K. Williams
President
Texas A&M University
College Station, Texas 77843

Opinion No. H- 272

Re: Whether statute
authorizing expenditure for
assistance in agriculture,
home economics, etc.,
will cover mariculture -
the marine version of
agriculture

Dear Dr. Williams:

Your question to us is whether a Texas County may legally expend monies for the salary and travel expenses of a County Extension Agent (Mariculture and Fisheries) whose purpose shall be the "establishing and conducting cooperative demonstration work and diffusing useful and practical information on mariculture and fisheries relating to agriculture and home economics" appointed by the Texas Agricultural Extension Service pursuant to the Smith-Lever Act (7 U.S.C. 341 et seq.). For our purposes "mariculture" may be defined as "the cultivation of marine organisms by exploiting their natural environment." Webster's New Collegiate Dictionary (1973).

The Smith-Lever Act, first adopted in 1914, now provides:

§ 341. "In order to aid in diffusing among the people of the United States useful and practical information on subjects relating to agriculture and home economics, and to encourage the application of the same, there may be continued or inaugurated in connection with the [land grant] college or colleges in each State, Territory, or possession. . . . agricultural extension work which shall be carried on in cooperation with the United States Department of Agriculture: . . . ." (emphasis added)

§ 342. "Cooperative agricultural extension work shall consist of the giving of instruction and practical demonstrations in <u>agriculture and home economics and subjects relating thereto</u> to persons not attending or resident in said colleges in the several communities, and imparting information on said subjects through demonstrations, publications, and otherwise and for the necessary printing and distribution of information in connection with the foregoing; and this work shall be carried on in such manner as may be mutually agreed upon by the Secretary of Agriculture and the State agricultural college or colleges. . . ." (emphasis added)

Federal funds are appropriated to finance the program.

In Texas, the program is administered under the auspices of the Texas A&M University, pursuant to Article 164, Vernon's Texas Civil Statutes, which reads:

"The Commissioner's Court of any county of this State is authorized to establish and conduct co-operative demonstration work <u>in agriculture and home economics</u> in co-operation with the Agricultural and Mechanical College of Texas, upon such terms and conditions as may be agreed upon by the Commissioners' Court and the agents of the Agricultural and Mechanical College of Texas; and may employ such means, and may appropriate and expend such sums of money as may be necessary to effectively establish and carry on such demonstration work in Agriculture and Home Economics in their respective counties." (emphasis added)

We have had occasion to refer to the limited powers of a commissioners court on many occasions. See, for example, Attorney General Opinions H-45 (1973), H-51 (1973), H-127 (1973). Accordingly, it has been held that such a court lacked authority to employ a co-ordinator of various groups

interested in eliminating Johnson grass [Attorney General Opinion O-5753 (1944)], likewise lacked authority to employ a person to demonstrate rat or gopher control [Attorney General Opinion O-6471 (1945)], and lacked authority to spend county funds to dredge a channel to be used by fishermen [Attorney General Opinion O-440 (1939)].   The first two of these cited Article 164.

On the other hand, based on the authority of Article 164, V. T.C.S., commissioners courts have been held to possess rather substantial powers to build a building to house the demonstration agent, etc. Attorney General Opinions O-2516 (1940); O-620 (1939); M-654 (1970).

Thus, the question we must answer is whether the authorization of Article 164 is sufficiently broad to include the duties of demonstrators in mariculture within the classification of "agriculture and home economics." Our function, like the function of the courts, is to determine legislative intent and give effect to it.   53 Tex. Jur. 2d, Statutes, §§ 119 et seq., p. 168 et seq.

The first state authorization for farmers' demonstration work in Texas was in 1911 with the enactment that year of a statute (Acts 1911, 32nd Leg., ch. 62, p. 105) authorizing such work "along the same lines as this work is and may be conducted by the United States Department of Agriculture." A similar statute was enacted in 1917 (Acts 1917, 35th Leg., ch. 35, p. 56) authorizing canning demonstrators.   In 1927, these statutes were amended to read as Art. 164 now reads (Acts 1927, 40th Leg., ch. 6, p. 9).   The purpose of the amendment we believe is shown by the emergency clause of the Act:

> "SEC. 2.   The fact that the present law authorizing cooperative demonstration work in agriculture and home economics is inadequate, and the fact that on account of such inadequacy, many counties of this State are prevented from effectively carrying on such demonstration work in agriculture and home economics; and the fact that it is for the best interest of the State that such counties should be authorized as early as

possible to inaugurate such work, creates an
emergency and an imperative necessity requiring
that the constitutional rule requiring bills to be
read on three several days be suspended, and the
same is hereby suspended, and this Act will take
effect and be in force from and after its passage;
and it is so enacted. "

In our opinion Article 164 is intended to give to county commissioners
extremely broad powers to institute demonstration programs in agriculture
and home economics, using those terms in their broadest senses.  As used
in the statute, we believe "agriculture" was intended to mean, in addition
to the cultivation and harvesting of crops (its narrow definition), the science
and art of production of plants and animals useful to man, and the prepara-
tion of these products for man's use, including farming, horticulture,
forestry, dairying and mariculture, as defined earlier in this opinion.

We therefore answer that in our opinion a Texas county may legally
expend monies for the salary of a marine agent to perform the duties out-
lined in your question.

## SUMMARY

The program of demonstrations in agriculture
and home economics authorized by Article 164,V. T.C.S.,
is sufficiently broad to include demonstrations on mari-
culture and fisheries relating to agriculture and home
economics.

Very truly yours,

JOHN L. HILL
Attorney General of Texas

APPROVED:

LARRY F. YORK, First Assistant

DAVID M. KENDALL, Chairman
Opinion Committee